We'll hear our argument first in Vanderveer v. Zoning Board of Appeals, No. 20-4252. May I please report, I'm Patricia White of Stag Harbor, New York, and I'm the attorney for William and Paola Fallon. It's going to help us if you speak into one of the mics because it's so easy for things to get garbled this way. Okay. Thank you. Okay. Is this a roll call? Yes, ma'am. Thank you. Okay. I've reserved two minutes for rebuttal. And I've divided my argument into two portions. The first involves the due process, including the first amendment, and the second involves the takings clause. So, and we've learned something about the takings clause in the CEDA report. There's a case that was decided in June, I believe, in New York. And we've tied it also to the Horn v. Department of Agriculture, which talked about appropriation. So that is what I'll focus on here. First of all, I found another case that I think would be very helpful to us. And I'm sorry it wasn't in my briefs. But it's Heron v. New York from Mississippi Court, 1975, 422 U.S. 853. That was a criminal case. It's a New York Act of law that said for bench trials, the bench attorney was not allowed to do summation, zero summation, elimination of summation. And the United States Supreme Court looked at that, and they said that was wrong. They said that was unconstitutional because a trial is backed by a new process. And here's what they wrote about closing arguments. And I think it's relevant to how much process elimination there could be in this case because— Your argument is that there should have been more process allowed in front of the Zoning Board of Appeals? Yes. Okay. I mean, is there authority that in a zoning situation when an applicant is seeking some kind of approval from a zoning board that there is a right to present testimony, to cross-examine witnesses? Well, here's the problem. Is there authority for that proposition? I don't think you treat it as any other administrative hearing. So you treat it as Goldberg v. Kelly, where there are going to be cross-examinations. Is there any authority that says this kind of a zoning hearing should be treated like any other administrative hearing? In some of the cases in New York, they refer to them as quasi-judicial, which would mean cross-examination. It's .6 and not .5. If it's quasi-judicial, then there would be cross-examination. The problem is if there's not cross-examination, then you don't get a hearing that's cross-examination, but it goes into a mid-judge term. So unlike the usual thing we have, which is like parity cuts and don't worry if you don't get everything you want at the first level, no worries because you'll get a hearing. Well, with that, don't we have to deal with the fact that at the Article 78 level, there is the possibility for more fact-finding and cross-examination if the review deems that warranted? No. I'm sorry. No, and I covered this in .6 and .5. If there is no cross-examination allowed at the ZBA, then it's treated as not being quasi-judicial, and then you can't get what you just described in the Article 78. That's the problem. And all of this stems from a pre-Kelley v. Goldberg case in New York. I traced it. It's ancestry of that. To matter be, home be birthed. It's in my .6 and my .5. And that case was the science form that said no cross-examination. But that was his requirement. But that was changed, I believe, by Kelley v. Goldberg in how it was taken together. So that's the problem. And that, I think, is why, with Nick, the challenge, Scott, Patrick, Scott. But now, I'm sorry, we don't have to reach this question, do we, of this process, unless there was a pre-existing, well, a non-conforming use, unless there was a substantial effect on the plaintiff's business, because otherwise there would be no property right. Well, there is a substantial effect, because he had a commercial use, which is a very large swath of the use, and it's pre-existing, and it's grandfathered. And it's vested under state law, the state, but it's the local government. Well, let me make sure I understand this. No one was preventing him from continuing his own use of the property for storage and other reasons. The question was whether he could lease it to a third party for that purpose. And what is the substantial effect on the plaintiff's business from the refusal to let him do that? Well, they said only residential, so I disagree with you. He had a commercial use, and they didn't find a way to abandon that commercial. He had a grandfathered commercial use, and that was completely taken away. Could he develop the property in a residential manner? If he had money to buy, to build a house, but— Well, but the point is he could have. I mean, in other words, he could have built a house. He could have—I think it was 3 1⁄2 acres. He could have divided it. Could he have sold off some of it? I don't think it could have been divided. It wasn't divided yet, so I don't think so. 3 1⁄2 acres. I think there was an article in The Times the other day—this is not in the record, of course— but about the springs and how most lots there are less than an acre. So I was just curious as to whether he could have done something in terms of the property. But the right to income is an important right, just like we saw the right to— But he still had a right to an income, right? He could have rented it out for residential purposes. He'd have to pay money to build something. He'd have to get a mortgage, and the house that he rented, the rents, maybe $3,000 a month wouldn't be enough to pay the mortgage for what he would build. That's the problem. And just like the right to exclude is important in the appropriate—in taking space from— If you are right, wouldn't that seriously impact the ability of towns and localities to impose these kinds of zoning restrictions? Well, if you're talking about somebody with a vested right— Well, I'm talking about any landowner. Any landowner in an area that's zoned for residential, if he or she wants to use a commercial and they can't because of the zoning restriction, it's not zoned for commercial. If we agree with you and accept your position, then all of that system would be severely disrupted. There is already a state-created right. It already exists. That's what grandfathering is. The new people that moved in, they know the rules. But according to New York law, in many cases, you have a grandfathered right. And let me say something else. The appellate term second reversed the criminal conviction, reversed the $7,000 fine, because they didn't find that Mr. Daniel had been in violation of the use of that property. According to the town law that exists. So it seems like the town law, they're trying, and the CDA, they're trying to put more into the statute that's in the statute. Every village and town has their own rules about abandonment, commercial, things like that. And you can't think generally, you know, well, can't towns do that? If they write it in their law, if it's clear in their law, if it's not made in their law, then you get to the bottom of this by cross-examination or truth to correct error. And using the words of the cross-examination to prove credibility, micro-credibility, as opposed to the restrictive narrative. Thank you, Ms. Weiss. You've reserved two minutes for rebuttal. We'll hear from your adversary. Mr. Crippen? Yes. Thank you. Scott Crippen. This is Dennis Feldman, Barrett-Smithtown, New York, for the LA Economies Campaign and related individual defendants. There was nothing taken from Mr. Vanderveer here. It's well established since almost the inception of zoning in the United States that residential zoning is not taken. When this property was zoned residential back in 1957, it was a vacant lot with an existing barn. There's no dispute that there is a pre-existing barn. There's nothing in the record that complained about the moose inside the barn, and that was outside of the CBA determination. The issue that arose in the administrative proceedings and is now pending in the state court is whether or not there was a pre-existing commercial use. If there was a vested commercial use, and commercial is a broad category, when we're dealing with pre-existing uses, they are very specifically defined, including at times with a survey with 100 feet here and there as to where the use exists so that you can look back and determine whether there's been a change or an extension. The categorical approach that there was some commercial aspect of this property until it was extended to be commercial forever is inconsistent with every case that's ever dealt with zoning or pre-existing uses ever. It's inconsistent with the fundamental concept of continuing a pre-existing use, and what we're looking at here is the state court, or the state process, which is through the towns and local government, of how to determine whether such a grandfathered use exists. Here, and again on the procedural posture, it's a motion to dismiss. There is nothing in this complaint about the business that was allegedly built up prior to 1957. The only factual paragraphs are paragraphs 22 to 25 of the complaint at page 14 of the record, and there's nothing. You can't tell what this alleged business is other than describing it as commercial, and the only evidence that was presented administratively that predates the zoning move-up at 71 and 72 of the record are that in 1953, Mr. Vanderbeer's father received a notice that the town was going to enact a zoning move-up, and part of the reason for that— That's what I'm referring to here. And how long had that been in place? It was classified as residential, and then in 1954, after receiving notice that the town was going to enact a zoning law, Mr. Vanderbeer requested that it be reclassified for tax purposes. They didn't classify it as commercial. They classified it as a bar. When was it? But at some point, was it 2010 it was classified as commercial? The tax classification is carried over. There's no bar classification. It's a statewide uniform system. So now it's classified as storage, which is applicable to the bar. The bar very well may be storage, and in East Hampton, this is discounting taxes for it. So a storage— If people have barns for their own personal use and they're not leasing them out to landscaping businesses, I get it. Exactly. If this is just being taxed as storage, the rate per day is going to be less than residential. Could he have developed the property, the three-and-a-half acres, in a residential way or in a noncommercial way? Absolutely. He still can. You asked before about severing off a parcel. It's one-acre zoning, and he has a little over three-and-a-half acres. So he can subdivide, as of right, into three separate parcels, and these lots are generally $1 million properties. I mean, that's the give or take what the average property is going for in this area. So he has the ability to develop multiple million-dollar residences. There's a $300,000 number in the record somewhere that— Is that the assessed value, which is not the market value, I gather? I'm not—I don't know exactly what you're referring to. That may be for the tax assessment purposes, but I'm not calculating this beyond— But you—I don't know if it's in the record, but, I mean, I suppose we could take judicial notice that one-acre lots in this part of the town or this part of the state are very valuable. They are absolutely very valuable. And he has—with some variances, he might even be able to get more than three. Here's a very—under Palo Zolo, we have a situation where half or so of a lot in west of Weaver Island was preserved because of wetland, and this isn't, you know, toast. But they said the remaining portion of that lot could still be used for valuable residential development. Here, the facts we have are not even at that level where a part of it is preserved. He has a vacant, very, very valuable residential— Well, how do you respond to the argument that he doesn't have the money to develop it residentially? That is not an argument for—that's not a constitutional issue. That's just a practical issue that many other people may be facing and cannot sue their local government saying, I don't have the money to do what I want with my property. I don't know that that's a necessary—he has options. I don't know exactly what those options are, but a federal lawsuit based on the Constitution is not one of them. There's no plausible claim here. Getting to the due process issue, the process for litigation is still continuing. There is an Article 78 proceeding. The way Article 78 is set up, I'm sure you're all very familiar with it, but if you have a judicial-type hearing, it goes directly to the appellate commission, and they review the record. If it's an administrative hearing like you have in the land-use situation here, it goes to the Supreme Court at the trial level, and it is reviewed under not a substantial evidence standard, but whether there was a rational basis. But they also have the ability to order a hearing at a trial if there is a question of fact. So here, the arguments regarding credibility of cross-examination are really academic. There's nothing in the record to support a preexisting use. Cross-examining his neighbors would not have done anything other than giving him an opportunity to harass his neighbors. The main person that was brought up was someone that said that they rode by by horseback and hadn't seen any activity for years. Whether or not that's true does not have any material impact on the building inspector or the zoning board reviewing his application, which was extremely, extremely sparse. Again, going back to HWG with the record, the only pre-zoning evidence is a letter from the town tax assessor that specifically says the appearance from the outside suggests a residence, but they're agreeing to redesignate it as a barn for tax reasons. So there's the pictures that Mr. looking at 576 and forward. There's a series of pictures. We don't get to see the barn or whatever's inside the barn, but the commercial use appears to be a pile of lumber. Well, should the district court have granted leave to amend? The district court, I wouldn't say leave to amend. The district court is silent as to the dismissal. It would be understood as dismissal without prejudice. It doesn't say dismissal with prejudice, and it's on the sufficiency of the pleading, so it would generally be without prejudice. Leave to amend, I believe, should be separate because there's been no showing of any likelihood of success on an amendment. If council were to come forward with some facts and a proposed amended pleading, it would be without prejudice, and they can bring an action, but just a blanket leave to amend in the future under these circumstances, I believe would be inappropriate. The Equal Protection Claim doesn't run, but there are no valid comparatives, whatever the standard we were going to use would be for that. One of the properties is commercially zoned. One of them is only described by the name of the owner, but after developing the record, we saw that it's a shipyard. It's been an existing shipyard and has been acknowledged for use since the 1960s. The inquiry for the Equal Protection Claim should be whether or not someone with a similar application was treated differently, and there is nothing in the record about any application at all for a different property. Now, despite the length of the complaint and the length of the record, there is nothing, no close complaint whatsoever about a preexisting commercial use of any property. And again, commercial use should not be the inquiry here. You cannot say my property is the grandfathered as commercial. When we deal with these, when we look at the cases, they use cases. There's a million cases about gas stations where you have how many pumps do you have, and you have double-sided pumps, upgrading pumps. They get very into detail about what the actual use is. There's a series of cases involving a neighboring town, the Sandland Mines, where they get into detail about this. A 50-acre property was in the Second Department in 2016, where there's a list of things that they can do on their lot. They can process concrete. They can do other things. But there's other uses that it cannot be put to. You can't process mulch. Here, the situation we have is someone claiming that they used this barn basically as a shed, and they would have piles of wood periodically on the property, which no one's really disputing. No one has attacked Mr. Vanderbeer's credibility. It's simply the application of the law to that credibility. And he's trying to bring that into a landscaping company running, using a mulching machine 24-7 in all their encampments. It's a completely different use. Thank you very much, unless the Court has any questions. I've received them on private from U.S. employees. Thank you, Mr. Krippen. Ms. Weiss, do you have two minutes for rebuttal? Yes. First of all, there's nothing in the evidence, nothing in the record, to show that a mulching machine was being used on the property 24-7. That's just completely made up. And I want to respond to whether I should have been given a right to freely do that. And, of course, I should have. And there's two cases from that I could cite. I could cite Ms. Chinn's dissent in Whiteside v. Culver Davis. That was a dissent, so I'm not sure citing it helps you. No, it does, because there's certainly an inference of the facts. And I could cite it more principally for Rule 15 of Starr said that versus NYU. The standards are getting released to a minimum. What would you allege if you were to submit an amended pleading that you haven't already? That would change things. Okay. Well, first of all, if Mr. Creppen doesn't think I'm being too specific enough in the equal protection, I would make that more specific with what was the application for that other property. And I didn't include certificates of occupancy. I would allege that I feel strongly that what they did here, now that we know that their criminal prosecution was just a moment's sham, what they did all together was to stop Mr. Vandenberg from using his property, to rent the landscape from storage, because people don't leave their grass over to be mowed, and for his hitler pilots, and what does a pilot mean for his lawyer? And they continue to bill him every year for that 440 tax bill. When we get a 440 tax bill, which is a commercial classification, you don't think that the government has relegated the only residential use. That's not logical. I would be clear that I feel there's an appropriation here on the reform versus department of agriculture, that the two reasons, and that is a kind of municipality case, two reasons. Number one, what they did was just revenue raising with a sham criminal proceeding, using their own town attorneys. If you have a 440 delegated to them by the district attorney, they certainly weren't neutral. They represented everybody. And I have good authority to that, because I have people who did county cases. Why don't you wrap up, counsel? Your time's expired. Okay. Anyway, I'm sorry. I am going to wrap up. To say the standard isn't the rule of the land isn't that what would I would, I feel is there's no way that it can be said that re-election would be futile. And I would just refer you to the tax officer. The officer really pays. And that's it. Thank you very much. Thank you, counsel.